KAREN G. JOHNSON-MCKEWAN (State Bar No. 121570)
kjohnson-mckewan@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA  94105-2669
Telephone:	+1-415-773-5700
Facsimile:	+1-415-773-5759

I. NEEL CHATTERJEE (State Bar No. 173985)
nchatterjee@orrick.com
DANIEL J. WEINBERG (State Bar No. 227159)
dweinberg@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA  94025
Telephone:	+1-650-614-7400
Facsimile:	+1-650-614-7401

Attorneys for Defendant
ROCKYOU, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ALAN CLARIDGE, an individual, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ROCKYOU, INC., a Delaware corporation,<br><br>Defendant. | Case No.  C-09-6032-PJH<br><br>**REPLY MEMORANDUM IN SUPPORT OF ROCKYOU'S MOTION TO DISMISS COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)**<br><br>Date:    February 2, 2011<br>Time:   9:00 a.m.<br>Courtroom: 3, 3rd Floor<br>Judge:  Honorable Phyllis J. Hamilton |

OHS West:261074082.2

# TABLE OF CONTENTS

**Page**

I. PLAINTIFF'S THEORY THAT PERSONAL INFORMATION IS CURRENCY OR PROPERTY SHOULD BE REJECTED ................................................................... 2

    A. Plaintiff Presents No Basis For Finding That He Lost Money Or Property ........... 2

    B. Plaintiff Cannot State Facts Sufficient To Allege That The Value Of PII Inures To His Benefit ................................................................................................ 5

    C. Plaintiff's Attempt To Create New Law Should Be Rejected ............................... 7

II. PLAINTIFF CANNOT STATE A CLAIM UNDER THE STORED COMMUNICATIONS ACT, EVEN WITH REFERENCE TO THE "CORRECT" SUBSECTION ........................................................................................... 9

III. PLAINTIFF CANNOT STATE A CLAIM UNDER THE CLRA BECAUSE HE IS NOT A "CONSUMER," DID NOT ACQUIRE "GOODS OR SERVICES" FROM ROCKYOU, AND FAILS TO PLEAD RELIANCE .......................................... 11

IV. PLAINTIFF CANNOT STATE A CLAIM FOR UNFAIR COMPETITION BECAUSE HE HAS NOT SUFFERED INJURY IN FACT OR LOST MONEY OR PROPERTY ........................................................................................................... 13

V. PLAINTIFF'S CONTRACT CLAIMS ARE BARRED BY THE TERMS OF THE AGREEMENT ................................................................................................. 14

VI. PLAINTIFF CANNOT STATE A CLAIM UNDER PENAL CODE SECTION 502(C) ............................................................................................................. 15

VII. CONCLUSION ........................................................................................................ 15

# TABLE OF AUTHORITIES

Page

**FEDERAL CASES**

*America Online, Inc. v. St. Paul Mercury Ins. Co.*,
   207 F. Supp. 2d 459 (E.D. Va. 2002) ................................................................................ 12

*Azadpour v. Sun Microsystems, Inc.*,
   No. 06-3272 MJJ, 2007 WL 2141079, (N.D. Cal. July 23, 2007) ....................................... 6

*Bradley v. Chiron Corp.*,
   No. 94-04342 CW, 1996 WL 441022, (N.D. Cal., July 15, 1996),
   *aff'd*, 136 F.3d 1317, 1324 (Fed. Cir. 1998) ..................................................................... 6

*Daghlian v. DeVry Univ., Inc.*,
   461 F. Supp. 2d 1121 (C.D. Cal. 2006) ........................................................................ 13, 14

*Doe 1 v. AOL LLC*,
   719 F. Supp. 2d 1102 (N.D. Cal. 2010) ............................................................... 2, 3, 12, 13

*Federal Trade Commission v. Toysmart.com, LLC*,
   Civ. Action No. 00-11341-RGS, 2000 WL 34016434 (D. Mass., July 21, 2000) ............ 5, 6

*Freedman v. America Online, Inc.*,
   329 F. Supp. 2d 745 (E.D. Va. 2004) ................................................................................ 10

*Hernandez v. Hilltop Fin. Mortg., Inc.*,
   622 F. Supp. 2d 842 (N.D. Cal. 2007) ............................................................................... 12

*Jackson v. Board of Equalization,*
   No. CIV S-09-1387 FCD DAD PS, 2010 WL 3733983 (E.D. Cal., Sept. 20, 2010) .......... 6

*Lozano v. AT&T Wireless Servs., Inc.*,
   504 F.3d 718 (9th Cir. 2007) ........................................................................................ 13, 14

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992) ............................................................................................................ 2

*Nordberg v. Trilegiant Corp.*,
   445 F. Supp. 2d 1082 (N.D. Cal. 2006) ............................................................................. 12

*Ruiz v. Gap, Inc.*,
   540 F. Supp. 2d 1121 (N.D. Cal. 2008) ........................................................................ 2, 3, 4

*Ruiz v. Gap, Inc.*,
   2009 WL 250481, 2009 U.S. Dist. LEXIS 10400 (N.D. Cal., Feb. 3, 2009) .................. 2, 4

*Schneider v. California Dept. of Corrections*,
   151 F.3d 1194 (9th Cir. 1998) ............................................................................................. 6

*Stearns v. Select Comfort Retail Corp.*,
   F. Supp. 2d , No. 08-2746 JF (PVT), 2010 WL 2898284,
   (N.D. Cal., July 21, 2010) ....................................................................................................

**TABLE OF AUTHORITIES**
(continued)

Page

*W. Mining Council v. Watt*,
    643 F.2d 618 (9th Cir. 1981) ................................................................................................ 5

**STATE CASES**

*Fairbanks v. Superior Court*,
    46 Cal. 4th 56 (2009) ........................................................................................................ 12

*Kazi v. State Farm Fire & Cas. Co.*,
    25 Cal. 4th 871 (2001) ...................................................................................................... 11

*Melchior v. New Line Prods., Inc.*,
    106 Cal. App. 4th 779 (2003) ........................................................................................... 12

*Meyer v. Spring Spectrum L.P.*,
    45 Cal. 4th 634 (2009) ...................................................................................................... 11

*Navistar Int'l Transp. Corp. v. State Bd. of Equalization*,
    8 Cal. 4th 868 (1994) ........................................................................................................ 11

*Olschewski v. Hudson*,
    87 Cal. App. 282 (1927) ................................................................................................... 12

*People v. Kozlowski*,
    96 Cal. App. 4th 853 (2002) ............................................................................................... 4

*Rock Drug, Inc. v. Johnson*,
    13 Cal. App. 2d 720, 734 (1936) ................................................................................ 11, 12

*Ward General Ins. Servs., Inc. v. Employers Fire Ins. Co.*,
    114 Cal. App. 4th 548 (2003) ........................................................................................... 12

**FEDERAL STATUTES**

18 U.S.C. § 2702(a)(1) ............................................................................................................... 9

18 U.S.C. § 2702(a)(3) ............................................................................................................... 9

**STATE STATUTES**

Cal. Civ. Code § 1761(a) .......................................................................................................... 11

Cal. Civ. Code § 1798.81.5(d)(1) ............................................................................................... 4

Cal. Civ. Code § 1798.82(e) ....................................................................................................... 4

Cal. Penal Code § 502(c) .......................................................................................................... 15

Cal. Penal Code § 502(c)(6) ..................................................................................................... 15

Cal. Penal Code § 502(e)(1) ..................................................................................................... 15

Defendant RockYou, Inc. ("RockYou") respectfully submits this reply memorandum in support of its Motion to Dismiss Plaintiff Alan Claridge's ("Plaintiff") First Amended Complaint. Plaintiff seeks to save his complaint from dismissal by elaborating on his truly novel damages theory that "customer [personally identifiable information ('PII')] constitutes both currency and property," the loss of which results in damage or harm. Even if Plaintiff's sweeping characterizations about the internet economy, and the numerous factual allegations asserted in his opposition (though not in his amended complaint) about the value of his personal information, are deemed true, they do not change the fact that none of the alleged value of customer PII inures to the benefit of the consumer. Plaintiff therefore cannot state facts sufficient to constitute cognizable damages or harm resulting from the theft of this information.

Plaintiff's damages theory—necessary to state nearly every asserted claim for relief—has undergone a complete metamorphosis from the original filing of this action in December 2009. Initially, this case was about the potential harm that could befall a consumer exposed to a heightened risk of identity theft. *See* Docket No. 1 ¶ 3 ("RockYou's willful failure to secure its users' sensitive PII led to multiple security breaches that exposed 32 million users to identity theft and other malicious conduct."). Now, this case is purportedly about Plaintiff losing his right to sell his personal information on some undefined black market. *See* Opposition ("Opp.") at 11 ("RockYou has deprived [Plaintiff] of the right to sell his own personal data, . . . ."). Shifting from grave concern over the risk of identity theft to a restriction on the right to sell personal information constitutes a drastic change in approach. Indeed, Plaintiff's theory so strains credibility that it appears to be nothing more than a sham to overcome RockYou's motion to dismiss and should be rejected.

Plaintiff's proposed damages theory has sweeping policy implications affecting many of the internet's leading companies and content providers. Companies like RockYou, Google, and Facebook have allegedly adopted an advertising-based business model in order to provide free content on the internet, much like traditional media companies. Plaintiff's theory that this "free" content is somehow "purchased" with user PII will undoubtedly open the floodgates to litigation under various statutes under which viewers, readers, and users of free content previously lacked

standing. Expanding the degree of protection afforded by such statutes, including California's Consumer Legal Remedies Act and Unfair Competition Law, is best left to a legislature, not the courts. This court should reject Plaintiff's bare, unsupported legal contentions that "personal information constitutes currency" and "loss of PII is an actual harm," and dismiss the complaint.

## I. PLAINTIFF'S THEORY THAT PERSONAL INFORMATION IS CURRENCY OR PROPERTY SHOULD BE REJECTED.

As Plaintiff acknowledges, the survival of his complaint "turns on whether this Court accepts or rejects Plaintiff's damage theory: PII, in this context, is both online currency and valuable property." Opp. at 4.[1] Accepting Plaintiff's theory would be both unprecedented and unwise. No court has recognized that the theft of personal information, without more, confers statutory standing or results in concrete, measurable damage. To do so here would send the parties down the avoidable path of expensive and time-consuming litigation, while also creating uncertainty and opening the floodgates to litigation over a business model long relied upon and now a foundation of the internet economy.

### A. Plaintiff Presents No Basis For Finding That He Lost Money Or Property.

The *Ruiz* line of cases soundly rejected Plaintiff's theory that the unauthorized release of personal information constitutes loss of money or property. *Ruiz v. Gap, Inc.*, 540 F. Supp. 2d 1121, 1127 (N.D. Cal. 2008) ("Ruiz has lost neither money nor property."); *Ruiz v. Gap, Inc.*, 2009 WL 250481, *3-*4, 2009 U.S. Dist. LEXIS 10400 (N.D. Cal., Feb. 3, 2009) (rejecting Ruiz's attempt to plead loss of property by alleging that "Plaintiffs have lost property in the form of their PII"). Plaintiff, however, professes to have contrary authority in *Doe 1 v. AOL LLC*, 719 F. Supp. 2d 1102 (N.D. Cal. 2010). Opp. at 8. But, as Plaintiff concedes, the claims in *AOL* were brought by a very different breed of plaintiff: ***paying subscribers***. *See AOL*, 719 F. Supp. 2d at 1105; *see also* Opp. at 9 ("AOL users paid AOL in U.S. currency for AOL's services . . ."). Accordingly, unlike here, the *AOL* court had no need to scrutinize whether the plaintiffs were

---

[1] Plaintiff presents his theory of harm under the standard for constitutional standing. Opp. at 7 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992)). RockYou, however, has not disputed whether Plaintiff has Article III standing, but has presented numerous grounds on which Plaintiff has failed to plead the elements of his various claims for relief, including statutory standing and damages. Plaintiff's theory of harm fails to cure any of the deficiencies identified in RockYou's motion.

OHS West:261074082.2     - 2 -     REPLY IN SUPPORT OF ROCKYOU'S MOTION TO DISMISS COMPLAINT
C-09-6032-PJH

1  "consumers" or had "lost money or property" as the Consumer Legal Remedies Act ("CLRA")
2  and Unfair Competition Law ("UCL") require, because they clearly were, or had.

3  Plaintiff's argument around this critical distinction is as unavailing as it is circular.
4  Plaintiff argues that because he contends his PII equates to money and property, he is no different
5  from the paying customers in *AOL*. Opp. at 9. Plaintiff's reasoning, of course, is no explanation
6  at all and provides no basis on which to determine customers paying money for Internet services
7  should be treated the same as customers admittedly receiving software for free. This Court
8  should reject Plaintiff's nonsensical reasoning and follow *Ruiz* in holding that Plaintiff has not
9  lost money or property.

10  *AOL* also diverges from this case in several other important respects. Unlike *Ruiz* and this
11  case, *AOL* did not involve the theft of information by third parties. Rather, defendant AOL
12  inadvertently disclosed its members' information, contravening its representations to its
13  customers that it would not share information with third parties. *Id.* at 1105, 1111. In addition,
14  unlike here, the "sensitive information" disclosed by AOL included not only user names and
15  passwords but names, addresses, telephone numbers, credit card numbers, social security
16  numbers, and financial account numbers. *Id.* at 1111. AOL also disclosed search queries that
17  exposed members' personal issues, including sexuality, mental illness, alcoholism, incest, rape,
18  adultery, and domestic violence. *Id.* Although AOL promised to keep its members fully
19  informed about what it does with such personal information, AOL members were not told that
20  search queries were stored in a manner making it possible to connect the stored queries with a
21  particular member. *Id.* at 1105, 1111. *AOL* was thus entirely different in the scope of
22  representations made and allegedly breached by AOL, as well as in the nature of the information
23  collected and disclosed.

24  The nature of the information at issue here presents another critical problem for Plaintiff.
25  The California Legislature has determined what type of information gives rise to a claim in
26  connection with a security breach. Specifically, the California Security Breach Information Act,
27  (which Plaintiff originally asserted as a basis for a claim, but later withdrew) applies to businesses
28  that store "personal information." The statute defines "personal information" as:

> [A]n individual's first name or first initial and his or her last name *in combination with any one or more of the following data elements*, when either the name or the data elements are not encrypted or redacted:
>
> (A) Social security number.
>
> (B) Driver's license number or California identification card number.
>
> (C) Account number, credit or debit card number, in combination with any required security code, access code, or password that would permit access to an individual's financial account.
>
> (D) Medical information.

Cal. Civ. Code § 1798.81.5(d)(1) (emphasis added); *accord id.* § 1798.82(e). RockYou is not alleged to have stored Plaintiff's "personal information" within the meaning of the statute. Accordingly, if Plaintiff's novel damages theory is accepted by this Court, it would eviscerate the limits imposed by the Security Breach Information Act and give consumers an avenue to sue companies that require consumers to utilize login credentials, like RockYou, regardless of the other kinds of personal information maintained by the company. Such a ruling would adversely affect every internet-based company that permits a user to create an account of any kind.

Finally, to further support his contention that disclosure of information is loss of property, Plaintiff cites *People v. Kozlowski*, 96 Cal. App. 4th 853 (2002), which found that a PIN code constitutes property in the context of extortion. Plaintiff again retreads arguments that *Ruiz* rejected. Like Plaintiff here, the plaintiff in *Ruiz* cited *Kozlowski* in support of the theory that "Plaintiffs have lost property in the form of their PII." *Ruiz v. Gap, Inc.*, 2009 WL 250481, *4. The *Ruiz* court found that *Kozlowski* did not support the plaintiff's theory and held that "Ruiz's allegations in the First Amended Complaint . . . that personally identifying information is property, and that the theft of Gap's laptops containing Ruiz's personal information counts as a loss of property under section 17200 *are mere conclusory legal allegations cast in the form of factual allegations*." *Id.* (emphasis added). The court held that such allegations could not cure the defects in the plaintiff's original complaint. *Id.* Though Plaintiff here has cited various academic articles about the nature of personal information, his allegations, like the *Ruiz*

plaintiffs', remain conclusory legal allegations that this Court need not accept as true, *W. Mining Council v. Watt,* 643 F.2d 618, 624 (9th Cir. 1981), and should reject.

### B. Plaintiff Cannot State Facts Sufficient To Allege That The Value Of PII Inures To His Benefit.

Plaintiff badly misses the mark when he argues that "what truly strains logic and reason is that RockYou could even attempt to argue that Plaintiff's PII lacks value." Opp. at 6. RockYou does not argue that PII is worthless; RockYou contends Plaintiff has not alleged (and cannot allege) facts sufficient to state that the value of PII inures in any way to the Plaintiff's benefit. *See* Docket No. 31 at 10 ("Without stating facts sufficient to show that Plaintiff derived benefit from the purported value of his information, Plaintiff cannot allege that a supposed diminution in value results in 'damage' or 'loss' to him."). Indeed, the allegations of the FAC, and even those of the opposition, indicate the value of PII inures to the benefit of advertisers and RockYou, not consumers. *See* Opp. at 5 ("PII is ***valuable to [RockYou]*** in a variety of ways, including using the data for highly targeted advertising.") (emphasis added); ("It is the ***value of this user PII for advertising*** that powers the economy of the 'free' Internet, and specifically, RockYou's business.") (emphasis added); 4 ("The monetary value of personal data is large and still growing, and corporate America is moving quickly to profit from this trend. Companies view this ***information as a corporate asset*** and have invested heavily in software that facilitates the collection of consumer information.") (emphasis added); First Amended Complaint ("FAC") ¶¶ 47 ("RockYou is able to make money this way, . . . ."); 93 (alleging user data is "of great value to RockYou, RockYou's advertisers, and wrongdoers," not Plaintiff).

Plaintiff's reliance on *Federal Trade Commission v. Toysmart.com, LLC*, Civ. Action No. 00-11341-RGS, 2000 WL 34016434 (D. Mass., July 21, 2000), further proves this point. As Plaintiff contends, in *Toysmart.com*, the database of consumer personal information was considered a ***company asset***, and could only be sold to a qualified buyer with the approval of the Bankruptcy Court, a process that would in no way involve individual consumers electing to sell their personal information. *See id.* at * 2.

Plaintiff never provides a meaningful explanation how the value of his PII inures to his

benefit, despite repeatedly urging the Court to accept that PII is a commodity, with readily ascertainable monetary value. Opp. at 9-10. For example, Plaintiff asserts that email and social network credentials may be worth between $1 and $35 on the black market. *Id.* at 9. But Plaintiff has not alleged that *any* market exists in which he could have sold his own data. Nor does Plaintiff allege that the "currency" of his personal information has lost any ability to "purchase" free content from companies, like RockYou, that collect personal information. Plaintiff provides no explanation and asserts no allegations as to how the "loss" or "diminution in value" of PII in any way impacts him.

In a last ditch attempt to make sense of his damages theory, Plaintiff offers that "RockYou has deprived him of the right to sell his own personal data, . . . ." Opp. at 11. In addition to being entirely false, the contention is purely conjectural, wildly inconsistent with the original complaint, and should be rejected as a sham. First, there is utterly no truth to the allegation that RockYou has deprived Plaintiff of the right, let alone ability, to sell his personal data if he so chooses.[2]

Second, even if it were pled, the court need not accept the contention as true because new, inconsistent allegations in an amended complaint may be stricken when they are false and a sham. *Stearns v. Select Comfort Retail Corp.*, -- F. Supp. 2d --, No. 08-2746 JF (PVT), 2010 WL 2898284, *13 (N.D. Cal., July 21, 2010); *Bradley v. Chiron Corp.*, No. 94-04342 CW, 1996 WL 441022, *5 (N.D. Cal., July 15, 1996), *aff'd*, 136 F.3d 1317, 1324 (Fed. Cir. 1998) (granting a motion to strike and dismiss a later-filed complaint, finding that the plaintiff could not, in good faith, have so diametrically reversed his recollection and position between the time of the filing of his original complaint and that of his second amended complaint); *see also Azadpour v. Sun Microsystems, Inc.*, No. 06-3272 MJJ, 2007 WL 2141079, *2 n.2 (N.D. Cal. July 23, 2007) ("Where allegations in an amended complaint contradict those in a prior complaint, a district

---

[2] This allegation is nowhere to be found in the FAC, and ought not to be considered either as a pleaded allegation or accepted as true for purposes of this motion. *See Schneider v. California Dept. of Corrections*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) ("In determining the propriety of a Rule 12(b)(6) dismissal, a court may not look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss."); *Jackson v. Board of Equalization,* No. CIV S-09-1387 FCD DAD PS, 2010 WL 3733983, *7 (E.D. Cal., Sept. 20, 2010) (disregarding allegations omitted from the first amended complaint but instead raised for the first time in the opposition to defendant's motion to dismiss).

1  court need not accept the alleged facts as true, and may, in fact, strike the changed allegations as
2  'false and sham.'") (citing Hon. William W. Schwarzer, *et al*., Federal Civil Procedure Before
3  Trial, § 9:223.5 (2006)).

4        In the original complaint, Plaintiff railed against RockYou for exposing him to a
5  heightened risk of identity theft and other related perils that are attendant to the release of e-mail
6  and social networking login credentials. *See* Docket No. 1 ¶¶ 18-19 ("The information stored in
7  RockYou's user database is a very powerful set of PII, including email login credentials, that
8  may be used for damaging and malicious purposes. By failing to secure its users' PII,
9  RockYou made all of this data available to even the least capable hacker."); 21 ("Because a
10 person's e-mail account acts as a modern day file cabinet for a variety of interactions, transactions,
11 and correspondence, and is fully searchable, even a cursory review of personal e-mails can
12 provide a litany of valuable and compromising information."). The same theme carried over into
13 the FAC. *See* FAC ¶ 24 ("[A]ccess to email accounts and social networking accounts allow
14 wrongdoers to access private information, to access communications with third-parties, and to
15 send false messages to other persons thereby causing reputational and financial damage to the
16 accountholder."). Now, however, Plaintiff asks the Court to accept the notion that he has been
17 deprived of the opportunity to sell his PII to third-parties, an act that would only further heighten
18 the risk of identity theft and other reputational and financial harm. This allegation is so
19 diametrically opposed to the injury asserted in the original complaint, and even the overarching
20 tones of the FAC, that it should be flatly rejected as false and a sham. Plaintiff cannot credibly
21 expect to go forward with this case on behalf of a class of similarly situated individuals by
22 contending that each was injured by a security breach that deprived them the opportunity to sell
23 their PII to third parties on a black market. In an effort to plead a damages theory, Plaintiff has
24 simply gone too far.

25       **C.**    **Plaintiff's Attempt To Create New Law Should Be Rejected.**

26       Plaintiff admits he can cite no cases supporting his theory that personal information is
27 "currency" with which goods or services may be "purchased." Plaintiff's explanation for the
28 absence of any legal support is as nonsensical as the theory itself: "[the lack of case law] stands to

1 reason as companies with similar business models to RockYou, such as Facebook, Google, and
2 Digg are all new or relatively new companies applying *an existing business model* to new
3 industries." Opp. at 5 (emphasis added). Plaintiff fails to explain why new businesses adopting a
4 long-established business model would open the door to Plaintiff's novel theory. To the contrary,
5 Plaintiff's own allegations demonstrate that his theory is far-fetched and would disturb long-
6 standing expectations about the scope of the law.

7 Plaintiff alleges that "RockYou makes money by selling advertising space, not wholly
8 unlike a newspaper or television program." FAC ¶ 48. The only difference is the greater ability
9 to target advertisements because of the nature of the internet. *Id.* ¶ 49. Plaintiff expands on this
10 characterization in his brief, arguing that "advertising is the engine driving the Internet economy"
11 and describing RockYou's business model as an "extension of the *traditional ad-supported*
12 *media model*." Opp. at 5-6 (emphasis added). As Plaintiff recognizes, this model has long been
13 used by television stations and other traditional media to provide content not directly paid for by
14 consumers. Yet Plaintiff cites not a single case recognizing any "currency" or "alternative means
15 of purchase" in the context of these traditional businesses. Plaintiff simply cannot justify now
16 blurring the line between purchase-driven and advertising-supported business models.

17 In addition, Plaintiff recognizes that accepting his theory would have far-reaching
18 implications for a business model relied upon by many leading internet companies, including
19 Facebook and Google. Such companies would likely face a flood of litigation based on
20 "purchases" and loss of "currency" if users were permitted to dance around the standing
21 requirements of the CLRA and UCL, among others. Thus, a ruling in Plaintiff's favor would
22 have a chilling effect on these companies and the Silicon Valley, and might result in the
23 imposition of onerous terms of use, increased costs of doing business, and may ultimately drive
24 some entities out of business entirely.

25 Plaintiff's admittedly novel damage theory is more properly considered by a legislature or
26 other policy-making body. The various non-judicial authorities that Plaintiff cites show that
27 issues of information collection, privacy, and data security are actively discussed. A legislature
28 could consider these views and balance them against the interests of advertising-supported

1  companies. To the extent Plaintiff insists on testing his theory through the courts, RockYou
2  submits that the most appropriate and efficient way to address the issue is through appeal. On
3  appeal, the court may consider a wide range of submissions from interested parties, including
4  companies like Facebook and Google, whose businesses are also at stake. Moreover, the Court,
5  RockYou, and Plaintiff should not be burdened by the time and expense of discovery and
6  possibly trial until Plaintiff's theory is backed by sound legal authority. Thus, the complaint
7  should be dismissed with prejudice, enabling Plaintiff to pursue his admittedly novel theory on
8  appeal if he so desires.

## II. PLAINTIFF CANNOT STATE A CLAIM UNDER THE STORED COMMUNICATIONS ACT, EVEN WITH REFERENCE TO THE "CORRECT" SUBSECTION.

11  Plaintiff asserts that he "inadvertently" cited the wrong section of the Stored
12  Communications Act and actually intended to plead a violation of 18 U.S.C. § 2702(a)(1) instead
13  of subsection (a)(3). Plaintiff's "correction" does not cure his failure to state a claim because
14  RockYou did not "knowingly divulge . . . the contents of a communication" as prohibited by
15  section 2702(a)(1).
16  Contrary to Plaintiff's assertion, subsections (a)(1) and (a)(3) of the Stored
17  Communications Act are *not* "functionally identical but for the recipient of the information at
18  issue, . . ." Opp. at 11. Subsection (a)(3) prohibits disclosure of "a record or other information
19  pertaining to a subscriber to or customer of such service (*not including the contents of*
20  *communications* covered by paragraph (1) or (2)) to any governmental entity." 18 U.S.C.
21  § 2702(a)(3) (emphasis added). In contrast, subsection (a)(1) prohibits disclosure of "*the*
22  *contents of a communication*" to "any person or entity." *Id.* § 2702(a)(1) (emphasis added).
23  Plaintiff acknowledges he cannot plead a claim under subsection (a)(3) because there was no
24  disclosure of information to a governmental entity. Plaintiff also cannot plead a claim under
25  subsection (a)(1); because there was no disclosure of the contents of a communication. The
26  information stolen by hackers consisted of login credentials. FAC ¶ 36. While login credentials
27  may be considered "information pertaining to a subscriber," they do not constitute the contents of
28  communications. Indeed, subsection (a)(3) explicitly states that subscriber records and

1    communications are distinct and separate forms of information.  *See* 18 U.S.C. § 2702(a)(3).

2    Thus, Plaintiff cannot state a claim under either subsection of the Stored Communications Act.

3          Plaintiff also fails to allege that RockYou "knowingly divulge[d]" anything,

4    communications or otherwise.  Plaintiff's reliance on *Freedman v. America Online, Inc.*, 329 F.

5    Supp. 2d 745 (E.D. Va. 2004), is misplaced.  In that case, the court considered whether the

6    defendant had "knowingly divulge[d]" information when it transmitted subscriber records to the

7    police, not knowing that the police's warrant was unsigned.  The court quoted pertinent

8    legislative history providing that "knowingly means that the defendant was [(i)] aware of the

9    nature of the conduct, [(ii)] aware of or possessing a firm belief in the existence of the requisite

10   circumstances and [(iii)] an awareness [sic] of or a firm belief about the substantial certainty of

11   the result."  *Id.* at 748 (modifications in original).  Applying that three-pronged standard, the court

12   found that the defendant had knowingly divulged subscriber information by faxing it to the

13   police.  *Id.* at 749.  The court noted that the defendant's employee "was undoubtedly aware of the

14   disclosure; she did not disclose the information inadvertently" and that faxing the information

15   would certainly result in disclosure.  *Id.*  Later, the court emphasized again that the defendant

16   must act "knowingly or intentionally," not inadvertently, in order to establish liability.  *Id.* at 751.

17         In contrast to *Freedman*, Plaintiff here admits that there was no intentional act of

18   disclosure. Rather, Plaintiff seeks to equate RockYou's alleged negligent implementation of its

19   system security with the higher mental state this statute requires.  *See* Opp. at 12 ("such gross

20   negligence is no different than taking the affirmative act of disseminating the data itself").  Unlike

21   an affirmative act, such as faxing information to the authorities, RockYou's alleged failure was in

22   the implementation of security protocols.  Such alleged failure does not create a "substantial

23   certainty" in the result.  Indeed, Plaintiff states specific facts as to how a malicious hacker

24   "stole[]" user e-mail addresses and passwords.  FAC ¶ 99.  RockYou divulged no information.

25         In addition, Plaintiff contends its allegations of a knowing disclosure are supported by

26   RockYou's "failure to remedy its massive and fixable security flaws," Opp. at 13, but Plaintiff

27   contradictorily alleges that within a day of learning of the security breach, RockYou had taken the

28   affected database offline and repaired the security flaw.  FAC ¶¶ 34-35.  The inadvertent

1  disclosure that resulted from hackers stealing the information from RockYou's database is
2  insufficient to state a claim under the Stored Communications Act. Because Plaintiff cannot
3  allege facts sufficient to state a claim that RockYou "knowingly divulged" the contents of any
4  "communication," Plaintiff's claim should be dismissed.

**III.  PLAINTIFF CANNOT STATE A CLAIM UNDER THE CLRA BECAUSE HE IS NOT A "CONSUMER," DID NOT ACQUIRE "GOODS OR SERVICES" FROM ROCKYOU, AND FAILS TO PLEAD RELIANCE.**

As discussed above, Plaintiff's theory that personal information is "currency" should be rejected. Accordingly, Plaintiff does not have standing under the CLRA because he cannot state a cognizable claim that he acquired anything by "purchase or lease," or that he "suffer[ed] any damage as a result of" RockYou's alleged violation of the statute.

Plaintiff nonetheless argues that he has suffered damage in the form of the "transaction cost" of filing this lawsuit, relying on *Meyer v. Spring Spectrum L.P.*, 45 Cal.4th 634 (2009). But *Meyer* itself found that "it would contort the statutory language to conclude that the preemptive expenditure of fees for this litigation means that Sprint's alleged unlawful practices had caused 'damage' at the time the lawsuit was filed." *Id.* at 643. As the *Meyer* court recognized, accepting Plaintiff's argument would abolish the standing requirements altogether, as anyone who filed a lawsuit would automatically have suffered "damage."

Plaintiff also fails to state a claim under the CLRA because the software applications provided by RockYou are not "goods or services." The statute defines "goods" as "tangible chattels." Cal. Civ. Code § 1761(a). Plaintiff contends that RockYou's software is tangible because it can be seen. Yet the cases that Plaintiff cites—neither of which interpret the CLRA—merely confirm that tangible property must be something more than visible; it must be corporeal and capable of being touched. *See Kazi v. State Farm Fire & Cas. Co.*, 25 Cal.4th 871, 880 (2001) ("Consistent with an insured's reasonable expectations, 'tangible property' refers to things that can be **touched, seen, and smelled**.") (emphasis added); *Navistar Int'l Transp. Corp. v. State Bd. of Equalization*, 8 Cal.4th 868, 875 (1994) ("Tangible property is that which is **visible and corporeal, having substance and body** . . . .") (quoting *Rock Drug, Inc. v. Johnson*, 13 Cal. App.

1  2d 720, 734 (1936)). RockYou's software does not fit this definition.[3]

2  To the contrary, software—information—has frequently been determined not to be "tangible" property. *See America Online, Inc. v. St. Paul Mercury Ins. Co.*, 207 F. Supp. 2d 459. 462 (E.D. Va. 2002) ("The plain and ordinary meaning of the term 'tangible' is property that can be touched. Computer data, software and systems are incapable of perception by any of the senses and therefore intangible."); *Ward General Ins. Servs., Inc. v. Employers Fire Ins. Co.*, 114 Cal. App. 4th 548, 556 (2003) ("'Tangible' means, inter alia, 'capable of being perceived esp. by the sense of touch.' Thus, relying on the ordinary and popular sense of the words, we say with confidence that the loss of plaintiff's database does not qualify as a 'direct physical loss,' *unless* the database has a material existence, formed out of tangible matter, and is perceptible to the sense of touch.") (emphasis in original). Similarly, the theft of information will not support a claim for conversion, which "requires interference with tangible rather than intangible property." *Melchior v. New Line Prods., Inc.* 106 Cal. App. 4th 779, 792-94 (2003); *Olschewski v. Hudson*, 87 Cal. App. 282, 288 (1927) (holding that conversion does not lie for intangible property rights). Plaintiff therefore cannot state facts sufficient to constitute the acquisition of "goods" under the CLRA.

Plaintiff also wrongly argues that RockYou's software may be considered services in the same manner as a mortgage loan. The mortgage loan cases make clear that such holdings are based on the fact that the individuals seek not only a credit line but financial services, such as the development of a refinancing plan. *See Hernandez v. Hilltop Fin. Mortg., Inc.*, 622 F. Supp. 2d 842, 850-51 (N.D. Cal. 2007). Moreover, to the extent any services were ancillary to the mortgage itself, these cases are called into question by *Fairbanks v. Superior Court*, 46 Cal.4th 56, 65 (2009). *See also* Docket No. 31 at 12.

Plaintiff further fails to state a claim under section 1770(a)(5) because he does not support his conclusory allegation that he relied on representations made by RockYou. Plaintiff cites *AOL*

---

[3] Plaintiff also misstates the holding of *Nordberg v. Trilegiant Corp.*, 445 F. Supp. 2d 1082 (N.D. Cal. 2006), which addressed whether the plaintiffs were consumers if they did not seek or desire the defendant's products, not the issue of what would fall under the definition of "goods or services."

1    for the proposition that the expectation of security and privacy fostered by such representations

2    would be material to his decision to disclose personal information to RockYou. Opp. at 16-17.

3    First, as discussed above, *AOL* involved information far more sensitive than that Plaintiff alleges

4    here. *See* 719 F. Supp. at 1113 (noting members' decision to disclose social security numbers and

5    financial account information). Second, the Court should not assume Plaintiff would have acted

6    differently had he known the alleged truth, where there is no allegation to that effect. Finally,

7    Plaintiff fails to identify the representations, material or not, that he read prior to his decision to

8    register with RockYou, making *AOL*'s holding irrelevant.

### IV. PLAINTIFF CANNOT STATE A CLAIM FOR UNFAIR COMPETITION BECAUSE HE HAS NOT SUFFERED INJURY IN FACT OR LOST MONEY OR PROPERTY.

Plaintiff contends that he has satisfied the standing requirement under the UCL by pleading injury in fact and loss of money or property. As discussed above, Plaintiff cannot state a claim under the UCL because the "loss" of PII is not the loss of money or property.

In addition, Plaintiff argues that he is entitled to restitution under the UCL, citing *Lozano v. AT&T Wireless Servs., Inc.*, 504 F.3d 718 (9th Cir. 2007), and *Daghlian v. DeVry Univ., Inc.*, 461 F. Supp. 2d 1121 (C.D. Cal. 2006). Plaintiff fails to explain what he seeks to have restored to him, as he is still in possession of his personal information. *Lozano* and *Daghlian* do not answer that question, nor do they support Plaintiff's position.

In *Lozano*, the court considered whether, in addition to overage payments, the plaintiff could also recover for cellular telephone minutes that he was forced to reserve and therefore lose as a result of the defendant's billing practices. 504 F.3d at 733. The court noted that "the concept of restoration or restitution, as used in the UCL . . . is broad enough to allow a plaintiff to recover money or property in which he or she has a vested interest." *Id.* (quoting *Juarez v. Arcadia Fin., Ltd.*, 152 Cal. App. 4th 889 (2007)). The court concluded that the plaintiff had a vested interest in the minutes that were provided in his cellular services plan. *Id.* at 722, 734. In *Daghlian*, the court considered whether the plaintiff had suffered injury in fact because the academic units he obtained at the defendant's institution likely would not transfer to other colleges. 461 F. Supp. 2d at 1155-56. The plaintiff "argue[d] that he suffered injury when he 'spent thousands of dollars in

1    tuition expecting that his degree would be a foundation for further education' and 'did not receive
2    what he bargained for.'" *Id.* at 1155. The court found that the plaintiff had sufficiently alleged
3    injury even though he did not allege that he attempted to transfer the credits or was forced to
4    begin his education anew at another institution. *Id.* at 1156.

5         Here, Plaintiff apparently asserts that he has a legally protected interest in his personal
6    information, Opp. at 7, but this is not an interest he obtained in any bargain with RockYou, nor is
7    it anything RockYou can restore to Plaintiff, as Plaintiff still possesses it. Plaintiff identifies no
8    sum of money that he expended or in which he has a vested interest. Plaintiff's reliance on
9    *Lozano* and *Daghlian* is thus misplaced. Since Plaintiff has not presented any plausible theory of
10   harm, his claims should be dismissed.

11   **V.    PLAINTIFF'S CONTRACT CLAIMS ARE BARRED BY THE TERMS OF THE AGREEMENT.**

12        Plaintiff's contract claims are barred by clear terms disclaiming the liability Plaintiff seeks
13   to impose. *See* Docket No. 31 at 19-20. Plaintiff asserts that these provisions do not apply
14   because they refer to unauthorized access to RockYou's "secure servers" and RockYou's servers
15   were not secure. This is an unreasonable interpretation. Plaintiff does not allege that RockYou's
16   servers were readily accessible to anyone; the information was accessed by hackers who breached
17   RockYou's network security. No server is completely protected against unauthorized access, and
18   simply because such access occurred does not mean a server is not "secure." Rather, RockYou's
19   disclaimers apply to precisely the kind of unauthorized access that occurred.

20        Plaintiff also asserts that the disclaimers are unconscionable and should not be enforced.
21   Yet Plaintiff is seeking to enforce RockYou's alleged obligation to secure Plaintiff's personal
22   information. That obligation and the liability disclaimers are two sides of the same coin: a
23   promise to protect information, limited by a provision that RockYou is not responsible for
24   unauthorized access. Plaintiff cannot have it both ways. The two provisions are not severable,
25   and this Court should not enforce one without the other. Either both provisions are valid, or both
26   are unenforceable; either way, Plaintiff's claim fails.

## VI. PLAINTIFF CANNOT STATE A CLAIM UNDER PENAL CODE SECTION 502(C).

Plaintiff fails to identify conduct by which RockYou is liable under Cal. Penal Code § 502(c). Plaintiff fails to state facts sufficient to constitute cognizable damage or loss as required by Cal. Penal Code § 502(e)(1). In addition, Plaintiff does explain how RockYou "provide[d] . . . a means of accessing a computer" in violation of section 502(c)(6). Instead, Plaintiff reviews his allegations that a hacker had to exploit the system's design. Simply because it was possible to improperly access RockYou's system does not mean that RockYou provided the means. Rather, RockYou sought to prevent unauthorized access and was a hacking victim.

Plaintiff also fails to explain how RockYou acted "without permission." Plaintiff reiterates that RockYou agreed to protect his personal information, but Plaintiff does not provide any authority to support his position that users—not the owner of the computer system—were entitled to any control over the design of said system. Penal Code § 502(c)(6) makes liable an individual or entity that provides a means of accessing "a computer, computer system, or computer network" without permission. Cal. Penal Code § 502(c)(6) (no reference to "data"). There is no basis for suggesting, as Plaintiff does, that permission is needed from anyone other than the owner of that computer, system, or network. Since the alleged means of access provided to the hackers is the so-called deficient system security, then RockYou only needed permission from itself to design the system. Plaintiff cannot allege that RockYou lacked that permission.

## VII. CONCLUSION

For the foregoing reasons and those set forth in RockYou's motion, this Court should grant RockYou's motion to dismiss as to each and every cause of action in the complaint.

Dated: January 19, 2011                                     ORRICK, HERRINGTON & SUTCLIFFE LLP


                                                            */s/ Karen G. Johnson-McKewan /s/*
                                                            KAREN G. JOHNSON-MCKEWAN
                                                                 Attorneys for Defendant
                                                                   ROCKYOU, INC.

**CERTIFICATE OF SERVICE**

    I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on January 19, 2011.

Dated: January 19, 2011.                              Respectfully submitted,

                                                      /s/ *Karen G. Johnson-McKewan* /s/
                                                            Karen G. Johnson McKewan