DAVID C. PARISI (SBN 162248)
(dcparisi@parisihavens.com)
PARISI & HAVENS LLP
15233 Valleyheart Drive
Sherman Oaks, California 91403
Telephone: (818) 990-1299

JAY EDELSON (*Pro Hac Vice*)
(jedelson@edelson.com)
CHRISTOPHER L. DORE (*Pro Hac Vice*)
(cdore@edelson.com)
EDELSON MCGUIRE LLC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Telephone: (312) 589-6370


ATTORNEYS FOR PLAINTIFF

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**OAKLAND DIVISION**

| | |
|---|---|
| ALAN CLARIDGE, individually and on behalf of all others similarly situated, | ) Case No. 09-CV-6032-PJH |
| | ) |
| Plaintiff, | ) |
| | ) **PLAINTIFF'S MOTION FOR APPROVAL** |
| v. | ) **OF CLASS ACTION SETTLEMENT** |
| | ) |
| ROCKYOU, INC., a Delaware corporation, | ) |
| | ) Date:  March 28, 2012 |
| Defendant. | ) Time:  9:00 A.M. |
| | ) Judge: Honorable Phyllis J. Hamilton |
| | ) |
| | ) |
| | ) |

**NOTICE OF MOTION**

NOTICE IS HEREBY GIVEN that the Plaintiff will move the Court, pursuant to Federal Rule of Civil Procedure 23(e), to grant approval of a proposed settlement in this consumer class action on March 28, 2012 at 9:00 A.M., or at such other time as may be set by the Court, at 1301 Clay Street, Oakland, California Courtroom 3, before the Honorable Phyllis J. Hamilton.

The Plaintiff seeks approval of this class action settlement, certification of the proposed class under Rule 23(b)(2), appointment of the Plaintiff as Class Representative, his counsel as Settlement Class Counsel, and approval of attorneys' fees and an incentive award.  The Motion is based on this Notice of Motion, the Brief in Support of the Motion and the authorities cited therein, any oral argument of counsel, and any other matter that may be submitted at the hearing.

Dated: December 15, 2011                    EDELSON MCGUIRE LLC


                                            By: _____ /s/ Jay Edelson _____
                                                  Attorneys for Plaintiff


JAY EDELSON (*pro hac vice*)
jedelson@edelson.com
CHRISTOPHER L. DORE (*pro hac vice*)
cdore@edelson.com
EDELSON MCGUIRE LLC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Telephone: (312) 589-6370

DAVID C. PARISI - SBN 162248
dcparisi@parisihavens.com
PARISI & HAVENS LLP
15233 Valleyheart Drive
Sherman Oaks, California 91403
Telephone: (818) 990-1299

1

## <u>Table of Contents</u>

**INTRODUCTION** ........................................................................................... 1

**I.    NATURE OF THE LITIGATION** ...................................................... 1

   **A.  Summary of the Litigation & Settlement** ................................ 1

   **B.  Defendant's Position** ............................................................... 3

**II.   SETTLEMENT TERMS** .................................................................... 3

   **A.  Settlement Class Definition** ..................................................... 3

   **B.  Injunctive Relief for the Benefit of the Settlement Class** ......... 3

   **C.  Release** ..................................................................................... 4

   **D.  Other Relief** .............................................................................. 4

**III.  THE PROPOSED SETTLEMENT CLASS SHOULD BE CERTIFIED** .................. 4

   **A.  The Requirement of Numerosity is Satisfied** ........................... 5

   **B.  The Requirement of Commonality is Satisfied** ......................... 5

   **C.  The Requirement of Typicality is Satisfied** .............................. 6

   **D.  The Requirement of Adequate Representation is Satisfied** ....... 7

   **E.  The Proposed Settlement Class Meets the Requirements of
         Rule 23(b)(2)** ........................................................................... 8

   **F.  Notice of Certification and Settlement is not Required Under
         Rule 23(c)(2)(A)** ....................................................................... 9

**IV.   THE COURT SHOULD APPOINT PLAINTIFF'S COUNSEL AS
        SETTLEMENT CLASS COUNSEL** ................................................ 11

**V.    THE PROPOSED SETTLEMENT WARRANTS APPROVAL** ................ 12

   **A.  The Strength of Plaintiff's Case** ............................................ 13

   **B.  The Risk of Further Litigation** .............................................. 14

   **C.  The Settlement Relief** ............................................................ 15

   **D.  The Experience and Views of Counsel** ................................... 16

   **E.  The Absence of Collusion Supports Approval** ........................ 16

VI.      **THE COURT SHOULD APPROVE THE AGREED-UPON ATTORNEYS' FEES AND EXPENSES BECAUSE THEY ARE REASONABLE** ........................... 17

VII.    **THE COURT SHOULD APPROVE THE AGREED-UPON INCENTIVE AWARD** ........................................................................................................ 19

**CONCLUSION** ........................................................................................................ 20

1

## Table of Authorities

2

**United States Supreme Court Cases:**

3

*Amchem Prods. Inc. v. Windsor*, 521 U.S. 591 (1997) ................................................ 4

4

*Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011)................................. 5, 6, 8, 10

5

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974) ................................................... 5

6

*Hensley v. Eckerhart*, 461 U.S. 424 (1983) ............................................................. 18

7

*Protective Comm. for Indep. Stockholders v. Anderson*, 390 U.S. 414 (1968)........................... 13

8

**United States Circuit Court of Appeals Cases:**

9

*Adamson v. Bowen,* 855 F.2d 668 (10th Cir. 1988) ..................................................... 8

10

*Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566 (9th Cir. 2004) ........................................ 13, 17

11

*Cunningham v. Cnty. of Los Angeles*, 879 F.2d 481 (9th Cir. 1988) ................................... 18

12

*Ellis v. Costco Wholesale Corp.*, 657 F.3d 970 (9th Cir. 2011)........................................ 8

13

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998)...................................... 5, 7, 18

14

*In re Bluetooth Headset Products Liability Litigation*, 654 F.3d 935 (2011) ................. 13, 17, 18

15

*In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454 (9th Cir. 2000) ........................................ 14

16

*In re Pac. Enterprises Sec. Litig.*, 47 F.3d 373 (9th Cir. 1995)....................................12, 16

17

*In re Syncor ERISA Litig.,* 516 F.3d 1095 (9th Cir. 2008)........................................... 12

18

*Kerr v. Screen Extras Guild, Inc.* 526 F.2d 67 (9th Cir. 1975) ....................................... 18

19

*McCown v. City of Fontana*, 565 F.3d 1097 (9th Cir. 2009) ......................................... 18

20

*Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615 (9th Cir. 1982)................................... 12

21

*Rodriguez v. Hayes*, 591 F.3d 1105 (9th Cir. 2010)................................................. 8

22

*Rodriguez v. West Publishing Corp.*, 563 F.3d 948 (9th Cir. 2009) ...................... 12, 13, 14, 15

23

*Staton v. Boeing Co.*, 327 F.3d 938 (9th Cir. 2003)......................................... 12, 20

24

*Walters v. Reno,* 145 F.3d 1032 (9th Cir. 1998) ..................................................... 8

25

*Wolin v. Jaguar Land Rover North Am. LLC*, 617 F.3d 1168 (9th Cir. 2010)............................. 6

26

*Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180 (9th Cir. 2001) ................................ 8

27

28

1

**United States District Cases:**

2

*Aho v. Americredit Fin. Services, Inc.*, (10CV1373 DMS) 2011 WL 5401799
(S.D. Cal. Nov. 8, 2011) ........................................................................... 8, 10

3

*Boyd v. Bechtel Corp.*, 485 F. Supp. 610 (N.D. Cal. 1979) ........................................ 16

4

*Celano v. Marriot Int'l, Inc.*, 242 F.R.D. 544 (N.D. Cal. 2007) ................................... 5

5

*Claridge v. RockYou, Inc.*, 785 F. Supp. 2d 855 (N.D. Cal. 2011) ...................... 13, 15

6

*Curtis-Bauer v. Morgan Stanley & Co.*, (C 06-3903) 2008 WL 4667090
(N.D. Cal. Oct. 22, 2008) ............................................................................ 14

7

*Garner v. State Farm Mut. Auto. Ins. Co.*, (CV-08-1365-CW) 2010 WL 1687832
(N.D. Cal. Apr. 22, 2010) ................................................................. 12, 13, 14, 16

8

9

*Hawecker v. Sorensen*, (10-CV-00085 OWW) 2011 WL 98757
(E.D. Cal. Jan. 12, 2011) .............................................................................. 9

10

*Hemphill v. San Diego Ass'n of Realtors, Inc.*, 225 F.R.D. 616 (S.D. Cal. 2005)........................ 17

11

*In re Conseco Life Ins. Co. Lifetrend Ins. Sales & Mktg. Litig.*, (M 10-02124 SI)
2010 WL 5387793 (N.D. Cal. Dec. 22, 2010) ............................................... 9

12

13

*In Re: Facebook Privacy Litigation*, (10-cv-02389-JW) (N.D. Cal. Dec. 10, 2010)................... 11

14

*In re Netflix Privacy Litigation*, (11-cv-00379-EJD) (N.D. Cal. Aug. 12, 2011) ....................... 11

15

*In re OmniVision Techs., Inc.*, 559 F. Supp. 2d 1036 (N.D. Cal. 2008) ......................... 12, 14, 16

16

*In re Shell Oil Refinery*, 155 F.R.D. 552 (E.D. La. 1993)......................................... 14

17

*Knight v. Red Door Salons, Inc.*, (08-01520 SC) 2009 WL 248367
(N.D. Cal. Feb. 2, 2009) ............................................................................. 20

18

19

*Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1298 (S.D. Fla. 2005)........................... 14

20

**Miscellaneous:**

21

7A FED. PRAC. & PROC. CIV. (2d ed. 1986) .......................................................... 8

22

7AA FED. PRAC. & PROC. CIV. (3d ed.) ............................................................. 10

23

ALBA CONTE & HERBERT B. NEWBERG, *Newberg on Class Actions* (4th ed. 2002)................ 9, 17

24

ALBA CONTE & HERBERT B. NEWBERG, *Newberg on Class Actions* (3d ed. 1992)................... 18

25

Fed. R. Civ. P. 23 (2007).........................................................................*passim*

26

MANUAL FOR COMPLEX LITIGATION (4th ed. 2004) ................................................ 4

27

28

1

**INTRODUCTION**

2      The settlement before the Court resolves a class action brought by Plaintiff Alan Claridge

3 shortly after Defendant RockYou, Inc. experienced a massive data breach in December of 2009

4 that resulted in a third party stealing millions of consumers' personal emails and confidential

5 passwords.  Plaintiff's lawsuit sought injunctive relief and monetary damages, and above all, to

6 change Defendant's security policies and procedures to prevent the theft and widespread

7 distribution of putative Class Members' personal information from occurring again.  Two years

8 later, after hard fought motion practice, discovery, and multiple rounds of in person and over the

9 phone settlement talks, including a settlement conference with Judge Seeborg, the Parties reached

10 an injunctive based settlement agreement in which Defendant agreed to undergo two thorough

11 security audits by an independent third party to ensure that putative Class Members' information

12 is stored in a secure and commercially reasonable manner.  As detailed below, this is an injunctive

13 only settlement, and does not release putative Class Members' claims for monetary relief,

14 allowing putative Class Members to benefit from strong injunctive measures while remaining

15 capable of pursuing monetary claims on an individual or class basis.  Under the complex and

16 difficult circumstances of defining quantifiable damages, the challenges faced by providing

17 individual relief to a putative Class of 32 million consumers, and the value that security audits

18 provide, this Settlement is the best possible resolution in that it provides definitive benefits to the

19 putative Class now without limiting alternative forms of recourse.  Plaintiff respectfully requests

20 that the Court approve the Settlement as reasonable and fair, certify the Settlement Class under

21 Fed. R. Civ. P. 23(b)(2), appoint Mr. Claridge as the Class Representative, his counsel as Class

22 Counsel, and approve the requested attorneys' fees and incentive award.

23 **I.**      **NATURE OF THE LITIGATION.**

24      **A.**      **Summary of the Litigation & Settlement.**

25      On December 28, 2009, Plaintiff brought a putative class action against RockYou in the

26 United States District Court for the Northern District of California for RockYou's purported

27 failure to secure and safeguard its users' personally identifiable information.  (Dkt. No. 1.)  In his

28

original Complaint, Plaintiff alleged causes of action for (1) violations of California's Unfair

Competition Law (Cal. Bus. & Prof. Code § 17200, *et seq.*), (2) violations of California's

Computer Crime Law (Penal Code § 502), (3) violations of California Civil Code § 1798.80,

(4) violations of California's Consumer Legal Remedies Act (Civil Code § 1750 *et seq.*),

(5) breach of contract, (6) breach of implied contracts, (7) breach of the implied covenant of good

faith and fair dealing, (8) negligence, and (9) negligence per se.  (Dkt. No. 1.)  Plaintiff's

Complaint sought injunctive relief as well as monetary damages.

On June 10, 2010, RockYou moved to dismiss Plaintiff's Complaint.  (Dkt. No. 28.)

Pursuant to a stipulation of the Parties, on August 12, 2010, Plaintiff filed a First Amended

Complaint.  (Dkt. No. 32.)  The First Amended Complaint deleted the claim asserting violations of

California Civil Code § 1798.80, but included a claim for violations of the Stored

Communications Act (18 U.S.C. § 2702).  (Dkt. No. 33.)  On September 17, 2010, RockYou again

moved to dismiss Plaintiff's First Amended Complaint.  (Dkt. No. 37.)  On April 11, 2011, the

Court issued an order granting the motion in part and denying in part RockYou's motion,

specifically dismissing Plaintiff's first, second, third, fourth and sixth causes of action.  (Dkt. No.

54.)  The dismissal was with prejudice with respect to the second, third and fourth causes of

action.  (Dkt. No. 54.)  The Court denied dismissal, however, with respect to Plaintiff's fifth,

seventh, eighth and ninth causes of action, and allowed Plaintiff an opportunity to replead his first

and sixth causes of action.  (Dkt. No. 54.)

On May 11, 2011, Plaintiff filed a Second Amended Complaint.  (Dkt. No. 55.)  Plaintiff's

Second Amended Complaint asserted the same claims as his First Amended Complaint, except

that Plaintiff withdrew the claim for breach of the implied covenant of good faith and fair dealing.

(Dkt. No. 55.)  RockYou answered the Second Amended Complaint on May 25, 2011.  (Dkt. No.

56.)  On May 27, 2011, Plaintiff propounded several sets of discovery on Defendant, including

interrogatories, requests to produce documents, and request to admit facts.

Throughout this litigation, the Parties engaged in a series of settlement discussions,

including during their Rule 26(f) conference on April 27, 2010, at an in-person meeting in San

1   Francisco, on March 5, 2010, and at a settlement conference before the Court, presided over by the

2   Honorable Judge Richard G. Seeborg (then Magistrate Judge) on June 18, 2010.  (Declaration of

3   Jay Edelson ¶ 5, a true and accurate copy of which is as Exhibit 2) (Dkt. No. 31.)  On May 13,

4   2011, counsel for Plaintiff and Defendant again met in person in San Francisco, joined by in-house

5   counsel for RockYou, to discuss the status of the case and explore potential modes of resolution.

6   (Edelson Decl. ¶ 6.)  Following Defendant's filing of an Answer to Plaintiff's Second Amended

7   Complaint, the Parties engaged in extensive settlement negotiations between June and November

8   2011, which eventually resulted in the proposed Settlement presently before the Court.  (Edelson

9   Decl. ¶ 7); (See Settlement Agreement, a true and accurate copy of which is attached hereto as

10  Exhibit 1.)  Resolution of this case occurred only after two years of contentious litigation and

11  multiple stages of settlement discussions.  (Edelson Decl. ¶ 7.)

12          **B.      Defendant's Position.**

13          At all times, Defendant has denied and continues to deny any wrongdoing whatsoever or

14  that it committed, or has attempted to commit, any wrongful acts or violations of law or duty,

15  including, but not limited to, those alleged in the Second Amended Complaint.  Defendant

16  contends that it has acted properly and therefore denies that Claridge or the Settlement Class have

17  been injured.  In addition, Defendant has and continues to maintain that it has meritorious defenses

18  to all claims alleged in the Second Amended Complaint and was and is prepared to vigorously

19  defend all claims asserted in this litigation.

20  **II.     SETTLEMENT TERMS**

21          **A.      Settlement Class Definition.**

22          The Settlement Agreement provides for a Settlement Class defined as follows:

23                  All individuals and entities in the United States who had RockYou
                    accounts in 2009.
24  (Ex. 1, § 1.9.)

25          **B.      Injunctive Relief for the Benefit of the Settlement Class.**

26          As set forth in the Parties' Settlement Agreement, Defendant has agreed to an injunction of

27  a term of thirty-six (36) months during which it will be required to undergo two audits of its

28

1   information systems security polices with respect to the maintenance of consumer records to be

2   conduced by an independent third-party.  (Ex. 1, § 2.1.)    To the extent a credible security threat is

3   revealed, RockYou has agreed to correct any security deficiencies.  (Ex. 1, § 2.1.)

4       **C.      Release.**

5       In exchange for the relief provided above, and upon entry of an order approving this

6   Settlement, Defendant and each of its related affiliates and entities will be released by Plaintiff in

7   his individual capacity from all claims, whether know or unknown, as more fully set for in the

8   Parties' Settlement Agreement. (*See* Ex. 1, § 3.1 for the full release.)  Separately, in exchange for

9   the relief provided above, and upon the entry of an order approving this Settlement, Defendant and

10  each of its related affiliates and entities will be released from all claims brought by the Proposed

11  Class for injunctive or declaratory relief based on facts alleged in the Second Amended

12  Complaint.  The Proposed Class's release does not include any claim for monetary relief.  (*See* Ex.

13  1, § 3.2 for the full release.)

14      **D.      Other Relief.**

15      In addition to the injunctive relief discussed above, the Defendant has agreed to the

16  following relief:

17      **Incentive Award to the Class Representative.**  Under the Settlement Agreement, and in

18  recognition of his efforts on behalf of the proposed Settlement Class, RockYou has agreed to pay

19  Plaintiff an incentive award of $2,000.  (Ex. 1 § 2.3.)

20      **Payment of Attorneys' Fees and Expenses.** Under the Settlement Agreement, Defendant

21  has agreed to pay Settlement Class Counsel attorneys' fees and reimbursement of expenses in the

22  amount of $290,000.  (Ex. 1 § 2.2.)

23  **III.    THE PROPOSED SETTLEMENT CLASS SHOULD BE CERTIFIED.**

24      Prior to granting approval of a class action settlement, the Court should determine that the

25  proposed settlement class is a proper class for settlement purposes.  MANUAL FOR COMPLEX

26  LITIGATION § 21.632 (4th ed. 2004); *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

27  The Court may certify a class when the plaintiff demonstrates that the proposed class and

28

1 proposed class representatives meet the following prerequisites of Rule 23(a):  numerosity,

2 commonality, typicality, and adequacy of representation.  Fed. R. Civ. P. 23(a)(1-4).  After

3 meeting the strictures of Rule 23(a), the plaintiff must meet one of the standards set forth in Rule

4 23(b).  Fed. R. Civ. P. 23(b).  Here, Plaintiff seeks certification under Rule 23(b)(2), which

5 requires a showing that "the party opposing the class has acted or refused to act on grounds that

6 apply generally to the class, so that final injunctive relief or corresponding declaratory relief is

7 appropriate respecting the class as a whole."  Fed. R. Civ. P. 23(b)(2).

8       In determining whether to certify a class, the Court does not inquire into the merits of the

9 plaintiff's claims.  *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177 (1974).  As such, the

10 Court accepts the allegations of the plaintiff's complaint as true, but may consider matters beyond

11 the pleadings to determine if the claims are suitable for resolution on a class-wide basis.  *Celano v.*

12 *Marriot Int'l, Inc.*, 242 F.R.D. 544, 548 (N.D. Cal. 2007).

13       **A.**     **The Requirement of Numerosity Is Satisfied.**

14       The numerosity prerequisite is met when "the class is so numerous that joinder of all

15 members is impractical."  Fed. R. Civ. P. 23(a)(1).  To satisfy this requirement there is no

16 "specific" number required, nor are the plaintiffs required to state the "exact" number of potential

17 class members.  *Celano*, 242 F.R.D. at 548.  Generally, the numerosity requirement is satisfied

18 when the class comprises 40 or more members.  *See id.* at 549.  In this case, the Settlement Class

19 has been estimated to be 32 million individuals, which is more than sufficient to satisfy the

20 numerosity requirement.

21       **B.**     **The Requirement of Commonality is Satisfied.**

22       The second threshold to certification requires that "there are questions of law or fact

23 common to the class."  Fed. R. Civ. P. 23(a)(2).  Commonality may be demonstrated when the

24 claims of all class members "depend upon a common contention" and "even a single common

25 question will do."  *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011); *see also Hanlon*

26 *v. Chrysler Corp.,* 150 F.3d 1011, 1019 (9th Cir. 1998) ("[t]he existence of shared legal issues

27 with divergent factual predicates is sufficient, as is a common core of salient facts coupled with

28

1  disparate legal remedies within the class").  The common contention must be of such a nature that

2  it is capable of class-wide resolution, and that the "determination of its truth or falsity will resolve

3  an issue that is central to the validity of each one of the claims in one stroke." *Dukes,* 131 S. Ct. at

4  2551.

5        As alleged in this case, all Settlement Class Members share the common issue of having

6  registered a user account on Defendant's website, including providing a personal email address

7  and confidential password, and thereafter, in December 2009, having their personal data stolen as

8  a result of a breach of Defendant's database.  (*See* Dkt. No. 48 ¶¶ 11, 30.)  Indeed, the removal of

9  Settlement Class Members' personal data occurred in a systematic fashion and during a fixed and

10 identifiable time period, stemming from similar underlying events and causes, and in direct

11 correlation with Defendant's security and data protection policies.  (*See* Dkt. No. 48 ¶¶ 25-41.)

12       The common issues among Settlement Class Members result in common factual and legal

13 questions such as:  (a) whether Defendant's security systems protecting Settlement Class

14 Members' personal data were secure and whether Defendant failed to use reasonable care and

15 utilized commercially reasonable methods to secure and safeguard its users' sensitive personal

16 data; (b) whether Defendant's conduct violated the Stored Communications Act (18 U.S.C. §§

17 2701, *et seq*.), California's Unfair Competition Law (Cal. Bus. and Prof. Code § 17200),

18 California's Consumers Legal Remedies Act (Cal. Civ. Code §§ 1750 et seq.), and/or California's

19 Computer Crime Law (Cal. Penal Code § 502); (c) whether Defendant's conduct constituted a

20 breach of contract, breach of implied contracts, negligence, and/or negligence per se; and (d)

21 whether Plaintiff and the Settlement Class are entitled to relief, and the nature of such relief.  (Dkt.

22 No. 48 ¶ 64.)

23       **C.    The Requirement of Typicality is Satisfied.**

24       Rule 23 next requires that Claridge's claims be typical of those of the putative Settlement

25 Class.  Fed. R. Civ. P. 23(a)(3).  "The purpose of the typicality requirement is to assure that the

26 interest of the named representative aligns with the interests of the class."  *Wolin v. Jaguar Land*

27 *Rover North Am. LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010).  "Under the rule's permissive

28

1    standards, representative claims are 'typical' if they are reasonably coextensive with those of

2    absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020.  Here,

3    Defendant's storage and subsequent loss of Plaintiff and Settlement Class Members' personal data

4    resulted in Claridge and members of the putative Settlement Class allegedly experiencing identical

5    loss and damage in the form of loss of the value and control of their personal information.  (*See*

6    Dkt. No. 48 ¶¶ 25-41, 53-56.)  The alleged injury experienced by Claridge and the other

7    Settlement Class Members occurred in an identical manner and through identical means.  (*See*

8    Dkt. No. 48 ¶¶ 25-41, 53-56.)  As such, Claridge's claims are typical of those of the proposed

9    Settlement Class, and Rule 23(a)(3) is satisfied.

10              **D.      The Requirement of Adequate Representation is Satisfied.**

11              The final Rule 23(a) prerequisite requires that the proposed class representative has and

12   will continue to "fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).

13   To determine if representation is in fact adequate, the Court must ask "(1) do the named plaintiffs

14   and their counsel have any conflicts of interest with other class members and (2) will the named

15   plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"  *Hanlon*, 150

16   F.3d at 1020.

17              In this case, Claridge has the same interests as the putative Settlement Class Members—all

18   have been affected by Defendant's loss of their personal information.  (*See* Dkt. No. 48 ¶¶ 25-41,

19   53-56.)  Therefore, Claridge has no interests antagonistic to the putative Settlement Class.

20   Further, Settlement Class Counsel are well respected members of the legal community, have

21   regularly engaged in complex litigation, and have extensive experience in consumer class action

22   lawsuits that are similar in size, scope and complexity to the present case.  (Edelson Decl. ¶¶ 12;

23   *see also* Firm Resume of Edelson McGuire, LLC, a true and accurate copy of which is attached as

24   Exhibit A of the Edelson Declaration.)  Accordingly, both Claridge and his counsel will

25   adequately represent the putative Settlement Class.

26

27

28

1    **E.      The Proposed Settlement Class Meets the Requirements of Rule 23(b)(2).**

2          A party seeking class certification under Rule 23(b)(2) bears the burden of establishing that

3    the defendant has "acted or refused to act on grounds generally applicable to the class," making

4    injunctive relief appropriate.  Fed.R.Civ.P. 23(b)(2).  *Zinser v. Accufix Research Inst., Inc.*, 253

5    F.3d 1180, 1195 (9th Cir. 2001).  The Ninth Circuit explained that for Rule 23(b)(2) class actions

6    "[i]t is sufficient if class members complain of a pattern or practice that is generally applicable to

7    the class as a whole."  *Walters v. Reno,* 145 F.3d 1032, 1047 (9th Cir. 1998) (citing 7A FED. PRAC.

8    & PROC. CIV. § 1775 (2d ed. 1986) ("All the class members need not be aggrieved by or desire to

9    challenge the defendant's conduct in order for some of them to seek relief under Rule 23(b)(2)")).

10   *See also Adamson v. Bowen,* 855 F.2d 668, 676 (10th Cir. 1988) (emphasizing that although "the

11   claims of individual class members may differ factually," certification under Rule 23(b)(2) is a

12   proper vehicle for challenging "a common policy").  "Class certification under Rule 23(b)(2) is

13   appropriate only where the primary relief sought is declaratory or injunctive."  *Ellis v. Costco*

14   *Wholesale Corp.*, 657 F.3d 970, 986 (9th Cir. 2011) (citing *Zinser,* 253 F.3d at 1195).

15         Additionally, the "key to the (b)(2) class is the indivisible nature of the injunctive or

16   declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or

17   declared unlawful only as to all of the class members or as to none of them." *Aho v. Americredit*

18   *Fin. Services, Inc.*, (10CV1373 DMS) 2011 WL 5401799, *6 (S.D. Cal. Nov. 8, 2011) (citing

19   *Dukes,* 131 S.Ct. at 2557).  In other words, "Rule 23(b)(2) applies only when a single injunction or

20   declaratory judgment would provide relief to each member of the class. It does not authorize class

21   certification when each individual class member would be entitled to a *different* injunction or

22   declaratory judgment against the defendant." *Dukes,* 131 S.Ct. at 2557.  Where the plaintiff seeks

23   only injunctive relief, and no monetary relief, under Rule 23(b)(2), the Plaintiff need only

24   demonstrate the uniform affect of the relief.  *See Rodriguez v. Hayes*, 591 F.3d 1105, 1125 (9th

25   Cir. 2010) (citing *Walters,* 145 F.3d at 1047  ("it is sufficient to meet the requirements of Rule

26   23(b)(2) that class members complain of a pattern or practice that is generally applicable to the

27   class as a whole."))  Certification of a class under Rule 23(b)(2) is appropriate here.

28

In the instant proceeding, the putative Settlement Class as a whole has been subjected to RockYou's policies and practices related to computer security, data protection, and the system wide loss of personal data, all of which make certification under Rule 23(b)(2) appropriate.  (Dkt. No. 48 ¶¶ 25-44.)  The injunctive relief set forth in the Parties' Settlement Agreement applies universally by requiring Defendant to undergo multiple security audits to ensure all Settlement Class Members' personal information is and continues to be protected in a commercially reasonable manner.  (*See* Ex. 1, § 2.1.)  This relief provides equal benefit to Plaintiff and each putative Settlement Class Member, and no individual Settlement Class Member is entitled to benefits in a manner different from the others.

**F.     Notice of Certification and Settlement is not Required Under Rule 23(c)(2)(A).**

Rule 23 does not require notice for classes certified under Rule 23(b)(2).  *See* Fed.R.Civ.P. 23(c)(2)(A) ("For any class certified under ... (b)(2), the court may direct appropriate notice to the class").  The Advisory Committee Notes to the 2003 Amendment explains that a court has authority that should be exercised with care, discretion, and flexibility.  *See* 2003 Advisory Committee's Note to Fed.R.Civ.P. 23(c)(2)(A); *In re Conseco Life Ins. Co. Lifetrend Ins. Sales & Mktg. Litig*., (M 10-02124 SI) 2010 WL 5387793, *3 (N.D. Cal. Dec. 22, 2010).  The Court has greater discretion when directing notice of classes certified under Rule 23(b)(1) or (b)(2) because "there may be less need for notice than in a (b)(3) class action.  In part this is because, in general, there is no right to request exclusion from a (b)(1) or (b)(2) class." *In re Conseco Life*, 2010 WL 5387793, *3 (internal citations omitted).

In determining the need for class wide notice, courts focus on the "cohesiveness" of the class and the degree to which the named plaintiff can adequately represent absent members without notice.  *Hawecker v. Sorensen*, (10-CV-00085 OWW) 2011 WL 98757, *10 (E.D. Cal. Jan. 12, 2011).  Under this approach, "the inquiry is to the substance of the class claims, and whether the class claims involve individual relief that would not affect all members equally in the event of settlement or verdict." *Id.* at *10 (citing ALBA CONTE & HERBERT B. NEWBERG, *Newberg on Class Actions*, § 4:1 (4th ed. 2002)).  The Advisory Committee Note to the 1996 Amendment

1   of Rule 23 states that "[i]n the degree that there is cohesiveness or unity in the class and the

2   representation is effective, the need for notice to the class will tend toward a minimum." *See* 1996

3   Advisory Committee's Note to Fed.R.Civ.P. 23(d)(2).

4          In representative actions brought under the other provisions of Rule 23(b), the class

5   generally will be more cohesive.  *See* 7AA Fed. Prac. & Proc. Civ. § 1786 (3d ed.)  For example,

6   each member would be affected by a judgment obtained by another if separate individual actions

7   were brought.  Likewise, it is less likely that there will be special defenses or issues relating to

8   individual members of a Rule 23(b)(1) or Rule 23(b)(2) class, than in the case of a Rule 23(b)(3)

9   class.  *Id*.  This means there is less concern about each class member having the opportunity to be

10  present.  *Id*.  Therefore, in cases brought pursuant to subdivisions (b)(1) or (b)(2), "once the court

11  determines that the members are adequately represented as required by Rule 23(a)(4), it is

12  reasonably certain that the named representatives will protect the absent members and give them

13  the functional equivalent of a day in court."  *Id*.

14         Here the putative Class is highly cohesive and uniform in the alleged harm and the

15  settlement relief.  Plaintiff and the other putative Class Members had identical experiences in

16  submitting personal information to RockYou and having that information taken by a third-party,

17  and the injunctive relief achieved by Plaintiff through settlement has an effect and benefit that may

18  be uniformly applied to the putative Class as a whole.  As described above, Plaintiff is an adequate

19  representative of the overall putative Class under Rule 23(a)(4), and his claims and experience are

20  typical relative to all other putative Class Members under Rule 23(a)(3).  Moreover, a number of

21  news articles have been published regarding the Parties' Settlement, including on relevant industry

22  related websites such as Dark Reading, DataBreaches.net, and Data Privacy Monitor.  (Edelson

23  Decl. ¶ 20.)

24         In sum, because the relief agreed to by the Parties here "is prophylactic, enures to the

25  benefit of each class member, and is based on accused conduct that applies uniformly to the class,

26  notice to absent class members and an opportunity to opt out of the class is not required." *Aho,*

27  2011 WL 5401799, *3 (citing *Dukes,* 131 S.Ct. at 2558 (noting relief sought in a (b)(2) class

28

"perforce affect[s] the entire class at once" and thus, the class is "mandatory" with no opportunity to opt out)).  As a result, the Court should exercise its discretion under 23(c)(2)(A) and not require that notice be disseminated to the proposed Settlement Class.

**IV.    THE COURT SHOULD APPOINT PLAINTIFF'S COUNSEL AS SETTLEMENT CLASS COUNSEL.**

Under Rule 23, "a court that certifies a class must appoint class counsel . . . [who] must fairly and adequately represent the interests of the class."  Fed. R. Civ. P. 23(g)(1)(B).  In making this determination, the Court must consider counsel's:  (1) work in identifying or investigating potential claims; (2) experience in handling class actions or other complex litigation, and the types of claims asserted in the case; (3) knowledge of the applicable law; and (4) resources committed to representing the class.  Fed. R. Civ. P. 23(g)(1)(A)(i-iv).

As discussed above, putative Settlement Class Counsel have extensive experience in prosecuting class actions and other complex litigation, and specifically have substantial knowledge and experience prosecuting class actions related to technology and privacy.  (Edelson Decl. ¶¶ 12 and Exhibit A thereto.)  *See also In Re: Facebook Privacy Litigation*, (10-cv-02389-JW) (Dkt. No. 69) (N.D. Cal. Dec. 10, 2010) (Judge Ware, in appointing co-lead counsel, noted that Edelson McGuire "were pioneers in the electronic privacy class action field, having litigated some of the largest consumer class actions in the country on this issue"); *In re Netflix Privacy Litigation*, (11-cv-00379-EJD) (Dkt. No. 59) (N.D. Cal. Aug. 12, 2011) (Judge Davila, in appointing Edelson McGuire lead counsel in a contested petition, noted that the firm "specializes in class actions relating to consumer technology and privacy issues" and that the "firm's significant and particularly specialized expertise in electronic privacy litigation and class actions, renders them superior to represent the putative class.")  Further, proposed Settlement Class Counsel have diligently investigated and prosecuted this matter, dedicating substantial resources to the investigation of the claims at issue, and have successfully negotiated the settlement of this matter to the benefit of the putative Settlement Class.  (Edelson Decl. ¶ 13.)  Accordingly, the Court should appoint Jay Edelson and Christopher L. Dore of Edelson McGuire, LLC to serve as Settlement Class Counsel for the Settlement Class pursuant to Rule 23(g).

1    **V.    THE PROPOSED SETTLEMENT WARRANTS APPROVAL.**

2    Under Federal Rule of Civil Procedure 23(e), "[t]he claims, issues, or defenses of a

3    certified class may be settled, voluntarily dismissed, or compromised only with the court's

4    approval[,]" and such approval may occur "only after a hearing and on finding that the [proposal]

5    is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e); *accord In re OmniVision Techs., Inc.*,

6    559 F. Supp. 2d 1036, 1040 (N.D. Cal. 2008) (citing *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th

7    Cir. 2003)).  A strong judicial policy exists that favors the voluntary conciliation and settlement of

8    complex class action litigation.  *In re Syncor ERISA Litig.,* 516 F.3d 1095, 1101 (9th Cir. 2008)

9    (citing *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615 (9th Cir. 1982)).

10    While the Court has discretion in approving any settlement, "[i]n exercising this discretion,

11    this circuit has long deferred to the private consensual decision of the parties." *Garner v. State*

12    *Farm Mut. Auto. Ins. Co.*, (CV-08-1365-CW) 2010 WL 1687832, at *8 (N.D. Cal. Apr. 22, 2010);

13    *see also Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) ("We put a good

14    deal of stock in the product of an arms-length, non-collusive, negotiated resolution....").  In fact,

15    when a settlement is negotiated at arm's length by experienced counsel, there is a presumption that

16    it is fair and reasonable.  *In re Pac. Enterprises Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995).  As

17    provided above, the Settlement Agreement was reached by experienced counsel with sufficient

18    information and after extensive arm's length negotiations, including in part through mediation

19    overseen by Judge Seeborg.  (Edelson Decl. ¶ 15.)  Accordingly, the Court's analysis of the

20    Settlement Agreement should be examined with a presumption that the Settlement Agreement is

21    fair.

22    It is well-settled that in analyzing the fairness, reasonableness, and adequacy of a class

23    action settlement, the Court may consider the following non-exhaustive list of factors: (1) the

24    strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further

25    litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered

26    in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the

27    experience and views of counsel; (7) the presence of a governmental participant; and (8) the

28

1    reaction of the class members of the proposed settlement." *Churchill Vill., L.L.C. v. Gen. Elec*.,

2    361 F.3d 566, 575 (9th Cir. 2004).  In the instant case, the *Churchill* factors favor approving the

3    Settlement.  Finally, the Court must find that there was no collusion present in reaching the

4    settlement. *In re Bluetooth Headset Products Liability Litigation*, 654 F.3d 935, 943 (2011).[1]

5         **A.     The Strength of Plaintiff's Case.**

6         "Basic to [analyzing a proposed settlement] in every instance, of course, is the need to

7    compare the terms of the compromise with the likely rewards of the litigation." *Protective Comm.*

8    *for Indep. Stockholders v. Anderson*, 390 U.S. 414, 424-25 (1968).  The analysis of Plaintiff's

9    probability of success on the merits, however, is not rigid or beholden to any particular formula,

10   and "the Court may presume that through negotiation, the Parties, counsel, and mediator arrived at

11   a reasonable range of settlement by considering Plaintiff's likelihood of recovery." *Garner*, 2010

12   WL 1687832, at *9 (citing *Rodriguez*, 563 F.3d at 965).

13        Class Counsel are confident in the strength of Plaintiff's claims; however, they are also

14   cognizant of the legal uncertainty in this litigation that would be present absent the instant

15   Settlement Agreement.  (*See* Edelson Decl. ¶ 8.)  Further, Defendant promises a vigorous defense

16   of the action in the absence of this Settlement Agreement, and although Plaintiff and the other

17   Class Members allege they were harmed, the difficulty in identifying and quantifying damages

18   specific to individual Class Members offers RockYou several defenses that could prove successful

19   at trial.  (Edelson Decl. ¶ 8.)  The potential difficulty in quantifying damages is echoed in this

20   Court's Order on Defendant's Motion to Dismiss.  *See Claridge v. RockYou, Inc.*, 785 F. Supp. 2d

21   855, 865 (N.D. Cal. 2011) ("the court has doubts about plaintiff's ultimate ability to prove his

22   damages theory in this case").  The Parties examined their respective views of the case in great

23

---

24   [1]    As a threshold matter, the concerns raised by the Ninth Circuit in *In re Bluetooth* are not
25   present here.  See *In re Bluetooth*, 654 F.3d at 943.  The parties there attempted to release all class
     claims, including both monetary and injunctive claims, without providing individual monetary
26   relief to the class.  Here, by contrast, the Settlement specifically excludes releasing monetary
     claims and only provides a limited release of injunctive claims based only on the injunctive relief
27   provided.  (Ex. 1, § 3.2.)  Likewise, putative Class Counsel's requested attorneys' fees are
     reasonable and proportionate to the resources utilized and the relief provided.

28

1   detail with the guidance of Judge Seeborg at mediation, and thereafter, among themselves, and

2   these in-depth discussions informed the Parties' eventual settlement.  (Edelson Decl. ¶ 9.)  When

3   the strengths of the Plaintiff's claims are weighed against the legal and factual obstacles,

4   combined with the complexity of class action practice, it is apparent that the proposed settlement

5   is in the best interest of Settlement Class Members as it provides strong injunctive relief, and

6   under the circumstances, it would be impossible to provide meaningful monetary relief for a

7   putative Class of 32 million consumers considering Defendant's size and financial position.  (Ex.

8   1, § 4.2); (Edelson Decl. ¶ 10.)  Accordingly, this factor favors approval of the Settlement.

9          **B.        The Risk of Further Litigation.**

10         The second fairness factor that this Court may consider is "the risk of continued litigation

11  balanced against the certainty and immediacy of recovery from the Settlement."  *In re OmniVision*

12  *Techs., Inc.*, 559 F. Supp. 2d at 1041 (citing *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458

13  (9th Cir. 2000)).  "The Court should consider the vagaries of litigation and compare the

14  significance of immediate recovery by way of the compromise to the mere possibility of relief in

15  the future, after protracted and expensive litigation.  In this respect, it has been held proper to take

16  the bird in hand instead of a prospective flock in the bush." *Lipuma v. Am. Express Co.*, 406 F.

17  Supp. 2d 1298, 1323 (S.D. Fla. 2005) (quoting *In re Shell Oil Refinery*, 155 F.R.D. 552, 560 (E.D.

18  La. 1993)); *see also Garner*, 2010 WL 1687832, at *10 ("Settlement avoids the complexity, delay,

19  risk and expense of continuing with the litigation and will produce a prompt, certain, and

20  substantial recovery for the Plaintiff class.") (quoting *Curtis-Bauer v. Morgan Stanley & Co.*, No.

21  C 06-3903, 2008 WL 4667090, at *4 (N.D. Cal. Oct. 22, 2008)).  Further, this factor favors the

22  approval of a settlement where, as here, significant procedural hurdles remain, including

23  dispositive motions, ongoing, laborious discovery, and potentially trial.  *See Garner*, 2010 WL

24  1687832, at *10 (citing *Rodriguez*, 563 F.3d at 966).

25         In the absence of the Settlement, it is certain that the expense, duration, and complexity of

26  protracted litigation would be substantial.  (Edelson Decl. ¶ 11.)  Significant costs would be

27  incurred were this matter to proceed to trial, including expenses for expert witnesses, technical

28

1  consultants, and myriad other costs necessitated by the trial of a nationwide class action.  (Edelson

2  Decl. ¶ 11.)  Further, evidence and witnesses from across the country would have to be assembled.

3  (Edelson Decl. ¶ 16.)  As a result, Plaintiff certainly faced obvious challenges in proving his case

4  on the merits and quantifying damages.  *Claridge*, 785 F. Supp. 2d at 865.  And, given the

5  complexity and novelty of the issues, the defeated Party would likely appeal.  (Edelson Decl. ¶

6  17.)  As such, the substantial and prompt relief provided to the Settlement Class under the

7  Settlement weighs heavily in favor of its approval, compared to the inherent risk of continued

8  litigation, trial, and appeal.

9     **C.    The Settlement Relief.**

10     Here, the primary relief sought by Plaintiff's Class Action was to ensure the protection of

11  Plaintiff and Class Members' personal information.  (Edelson Decl. ¶ 18.)  Specifically, the core

12  of Plaintiff's Second Amended Complaint focused on RockYou's allegedly insufficient data

13  protection measures.  (Edelson Decl. ¶ 18.)  In response, the Settlement Agreement here calls for

14  RockYou to undertake two security audits over the next 36 months to make certain that its data

15  retention policies and data security measures presently are and will remain in line with

16  commercially reasonable standards.  (Ex 1 § 2.1.)  These injunctive measures apply to all Class

17  Members equally, and provide equal benefit to each.  The security audits are valuable and fulfill

18  the principal purpose of this litigation by protecting Class Members' personal information.

19  (Edelson Decl. ¶ 19.)  As the alleged failure to protect Class Members' confidential personal

20  information was the central reason giving rise to Plaintiff's Class Action, the relief secured here

21  achieved Plaintiff's primary objectives.

22     Of notable importance, the Settlement Agreement, and its corresponding release language,

23  do not affect the rights of proposed Class Members to monetarily recover for claims raised in

24  Plaintiff's Complaint. (Ex. 1 § 3.2.)  Through the litigation and settlement process, it became

25  apparent that obtaining monetary relief for the entire class was not realistic for a Class of 32

26  million individuals.  (Ex. 1 § 4.2); (Edelson Decl. ¶ 10.)  Thus, instead of binding Class Members

27  without providing meaningful individual monetary benefits, they remain free to pursue monetary

28

claims against RockYou on an individual or class basis if they so choose.  As such, the settlement relief, here as it pertains to injunctive relief, is as good or better than could be obtained at trial, and at the same time leaves open alternative channels for putative Class Members to pursue any monetary claims they may have.  Critically, this relief is being provided now instead of after trial, the outcome of which is uncertain.

### D. The Experience and Views of Counsel.

The next factor that the Court may consider is counsel's experience and views about the adequacy of the Settlement. *Garner*, 2010 WL 1687832, at *14 (considering views of plaintiff's and defendant's counsel that the settlement was fair); *see also In re OmniVision Techs., Inc.*, 559 F. Supp. 2d at 1043 (quoting *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979)) ("[t]he recommendations of plaintiffs' counsel should be given a presumption of reasonableness.") Reliance on such recommendations is premised on the fact that "parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation." *Rodriguez*, 563 F.3d at 967 (quoting *In re Pac. Enters.*, 47 F.3d at 378.)

Class Counsel has regularly engaged in major complex litigation and has extensive experience in prosecuting consumer class action lawsuits of similar size and complexity.  (*See* Edelson Decl. ¶ 12.)  Through their investigation, litigation, and the settlement process, Class Counsel have gained an intimate understanding of the instant litigation, and believe the Settlement clearly meets the "fair, adequate, and reasonable" standard required for Court's approval. (Edelson Decl. ¶ 14.)  Further, RockYou is represented by one of the country's most prominent law firms, and Defendant's counsel, while not agreeing with the validity of Plaintiff's claims, agree that the Settlement Agreement is fair.  (*See* Dkt. 58.)  This factor, therefore, also favors the Court's approval of the Settlement Agreement.

### E. The Absence of Collusion Supports Approval.

This Court must also consider the absence or presence of collusion between the Parties. *See In re Bluetooth*, 654 F.3d at 947 ("The district court's approval order must show not only that

1   'it has explored [the *Churchill* ] factors comprehensively,' but also that the settlement is 'not the

2   product of collusion among the negotiating parties.'"  However, "[a]s a general principle, 'the

3   courts respect the integrity of counsel and presume the absence of fraud or collusion in negotiating

4   the settlement, unless evidence to the contrary is offered.'"  *Hemphill v. San Diego Ass'n of*

5   *Realtors, Inc.*, 225 F.R.D. 616, 621 (S.D. Cal. 2005) (quoting ALBA CONTE & HERBERT B.

6   NEWBERG, *Newberg on Class Actions* § 11:51 (4th ed. 2002)).

7      The instant Settlement Agreement is the result of arm's length negotiations, where the

8   Parties engaged in a settlement conference before the Honorable Judge Seeborg, took part in

9   contentious and hard fought litigation for two full years, met on more than one occasion in person

10  to discuss settlement, and eventually reached this Settlement through extensive settlement

11  discussions.  (Edelson Decl. ¶ 15.)  As stated, the Settlement provides considerable injunctive

12  value to the Class in the form of multiple security audits over the next 36 months and narrowly

13  draws the Class release to affect only injunctive claims, both of which make the relief

14  proportionate to the attorneys' fees requested.  *See In re Bluetooth*, 654 F.3d at 947.  Additionally,

15  the Parties did not discuss attorneys' fees until after agreeing upon Class relief and Class Counsel

16  is not seeking a lodestar enhancement of any kind.  (Section VI, *infra*) (Edelson Decl. ¶ 22.)  And,

17  as already discussed, both Parties were represented by counsel experienced in complex class

18  action litigation and settlement throughout the entire course of the negotiation process. (Edelson

19  Decl. ¶ 12.)  Accordingly, the Court should find that this process resulted in a Settlement free from

20  any taint of collusion, further favoring this Court's approval.

21  **VI.** **THE COURT SHOULD APPROVE THE AGREED-UPON ATTORNEYS' FEES**
22     **AND EXPENSES BECAUSE THEY ARE REASONABLE.**

23     Contingent on Court approval, RockYou has agreed to pay attorneys' fees and the

24  reimbursement of expenses in the amount of $290,000.  (Ex. 1 § 2.2.)  As shown below, the

25  amount of fees agreed to by the Parties is eminently fair and reasonable and, under controlling

26  Ninth Circuit authority, is in line with fees typically approved by this Circuit.  Notably, the fee

27  sought by Class Counsel is *lower* than their actual lodestar, which is presently in excess $300,000,

28  further demonstrating the reasonableness of Class Counsel's fee request.  (Edelson Decl. ¶ 27.)

1    Under Ninth Circuit precedent, the lodestar figure presented by the moving party is

2    "presumptively reasonable."  *Cunningham v. Cnty. of Los Angeles*, 879 F.2d 481, 488 (9th Cir.

3    1988).

4          The lodestar can be adjusted up or down to make certain attorneys' fees fair and

5    reasonable.  *In re Bluetooth*, 654 F.3d at 943 (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011,

6    1019 (9th Cir.1998)).  In this Circuit, an enhancement to the base lodestar calculation can be made

7    by analyzing the factors laid out in *Kerr v. Screen Extras Guild, Inc.* 526 F.2d 67 (9th Cir. 1975),[2]

8    and the majority of class action fee awards using the lodestar method apply a multiplier of 1 to 4,

9    but considerably higher amounts have been awarded.  *Id.* at 1051 n. 6.  *See* ALBA CONTE &

10   HERBERT B. NEWBERG, *Newberg on Class Actions* § 14:03 (3d ed. 1992) (recognizing that

11   multipliers of one to four are frequently awarded.)

12         Here, however, Class Counsel is not requesting any form of a lodestar enhancement even

13   though the Settlement provides strong injunctive value to the Class and does not release Class

14   Members' monetary claims.  As the protection of Plaintiff and Class Members' sensitive personal

15   information was an overriding purpose of Plaintiff's Class Action, the relief secured by this

16   Settlement demonstrates that the litigation and the settlement were successful.  (Edelson Decl. ¶

17   18.)  Moreover, obtaining individual monetary relief in this case was simply not be possible with a

18   class size of 32 million consumers and Defendant's financial condition.  (Ex. 1 § 4.2); (Edelson

19   Decl. ¶ 10.)

20   _____

21   [2]   The *Kerr* factors include: (1) the time and labor required; (2) the novelty and difficulty of the
22   issues involved; (3) the skill required to perform the legal services properly; (4) the preclusion of
     other employment; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) the time
23   limitations imposed by the case; (8) the amount in question and the results obtained; (9) the
     experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the
24   nature and length of the professional relationship with the client; and (12) awards in similar cases.
     *Kerr*, 526 F.2d at 69-70. Foremost among these considerations, however, is the benefit obtained
25   for the class.  *In re Bluetooth*, 654 F.3d at 943 (citing *Hensley v. Eckerhart*, 461 U.S. 424, 434–36,
     (1983)); *see also McCown v. City of Fontana*, 565 F.3d 1097, 1102 (9th Cir. 2009) (ultimate
26   reasonableness of the fee "is determined primarily by reference to the level of success achieved by
     the plaintiff").  As Plaintiff's stated lodestar is presumptively reasonable, analysis under the *Kerr*
27   factors is not necessary, as Plaintiff's do not seek a lodestar enhancement.  *Cunningham*, 879 F.2d
     481 at 488.

28

As supported by the attached declaration of Jay Edelson, Class Counsel have a lodestar figure of $310,712. (Edelson Decl. ¶ 27.) The following chart breaks down the lodestar figure into hours and hourly rate by each attorney and expenses:

| Attorney | HOURS | HOURLY RATE | TOTAL |
|---|---|---|---|
| Jay Edelson (Managing Partner) | 24.7 | $600 | $14,820 |
| Rafey Balabanian (Partner) | 53.6 | $450 | $24,120 |
| Steven Teppler (Partner) | 19.3 | $600 | $ 11,580 |
| Christopher Dore (associate) | 465.9 | $325 | $151,417 |
| Chandler Givens (associate) | 129.5 | $265 | $34,317 |
| Brad Baglien (associate) | 10.5 | $365 | $3,832 |
| Michael Aschenbrener (former associate) | 178.8 | $395 | $ 70,626 |
| Law Clerks | 44.2 | $210 | $9,282 |
| **Attorney Time Total** | **926.5** | | **$310,712** |
| **Expenses** | | | $8,658 |
| **Total** | **926.5** | | **$319,370** |

(Edelson Decl. ¶ 27.) The attorneys performing work on this litigation are billed at rates that correlate to their respective experience, that are reasonable in the California and Chicago legal markets, and which have been approved by state and federal courts in similar settlements. (Edelson Decl. ¶ 26.)  Further, the hours submitted were reviewed, and any unnecessary hours have been adjusted. (Edelson Decl. ¶ 23.)  And, as documented above, Class Counsel have expended in excess of $8,658 in reimbursable expenses, such as filing fees, appearance fees, travel, and case administration.  (Edelson Decl. ¶ 28.)  In the end, proposed Class Counsel's fee request is eminently reasonable under the law, and should therefore be approved by the Court.

## VII.   THE COURT SHOULD APPROVE THE AGREED-UPON INCENTIVE AWARD.

Plaintiff requests that the Court approve the incentive award for Class Representative Alan Claridge in the amount of $2,000, as agreed by the Parties.  (Ex. 1, § 3.2.) "[N]amed plaintiffs, as opposed to designated class members who are not named plaintiffs, are eligible for reasonable

incentive awards." *Knight v. Red Door Salons, Inc.*, (08-01520 SC) 2009 WL 248367, *7 (N.D. Cal. Feb. 2, 2009) (quoting *Staton*, 327 F.3d at 977). The Court has discretion to approve any incentive award and should consider relevant factors, including: "[(1)] the actions the plaintiff has taken to protect the interests of the class, [(2)] the degree to which the class has benefitted from those actions, [and (3)] the amount of time and effort the plaintiff expended in pursuing the litigation." *Staton*, 327 F.3d at 977. The amount of work Mr. Claridge has expended on behalf of the Class is reflected in the reasonable incentive award proposed.

Mr. Claridge acted in the best interest of the Class throughout the litigation.  (Edelson Decl. ¶ 29.)  Plaintiff communicated at length with Class Counsel regarding the factual development of the case and his personal experience with RockYou.  (Edelson Decl. ¶ 29.) Further, Mr. Claridge reviewed many documents filed and exchanged by the Parties, including the complaint, settlement agreement, and other documents, and likewise was consulted on the accuracy of the statements made in these documents and the veracity of the claims. (Edelson Decl. ¶ 29.) During the pendency of this Action, Mr. Claridge took time out of his personal and professional life, committing all necessary efforts to assist in the preparation, litigation, and settlement of this case on behalf of himself and the putative Class. (Edelson Decl. ¶ 29.) Accordingly, Plaintiff requests that the Court approve the agreed-upon incentive award of $2,000, as it is reasonable and justified.

## **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully asks that the Court grant approval of the proposed Settlement Agreement, certify the Settlement Class, appoint Plaintiff as the Class Representative and Plaintiff's counsel as Class Counsel, and enter the proposed order attached hereto (a true and accurate copy of which is attached as Exhibit A to the Settlement Agreement), and grant such further relief the Court deems reasonable and just.

Dated: December 15, 2011        EDELSON MCGUIRE LLC

By:   _____/s/ Jay Edelson_____

Attorneys for Plaintiff

JAY EDELSON
jedelson@edelson.com
CHRISTOPHER L. DORE
cdore@edelson.com
EDELSON MCGUIRE, LLC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Telephone: (312) 589-6370
Fax: (312) 589-6378

DAVID C. PARISI - SBN 162248
dcparisi@parisihavens.com
SUZANNE HAVENS BECKMAN – SBN 188814
shavens@parisihavens.com
PARISI & HAVENS, LLP
15233 Valleyheart Drive
Sherman Oaks, California 91403
Telephone: (818) 990-1299

1

## CERTIFICATE OF SERVICE

2

    The undersigned certifies that, on December 15, 2011, he caused this document to be

3

electronically filed with the Clerk of the Court using the CM/ECF system, which will send

4

notification of filing to counsel of record for each party.

5

6

                                        EDELSON MCGUIRE LLC

7

                                By:     /s/  Christopher L. Dore

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28